**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ILLINOIS WHOLESALE CASH REGISTER, INC., an Illinois corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )     No. 08 C 363 |
| PCG TRADING, LLC d/b/a CONVERGE, a Delaware limited liability company, | ) ) ) ) |
| Defendant. | ) ) |

**<u>MEMORANDUM OPINION</u>**

Before the court is defendant's motion to dismiss the complaint for lack of subject matter jurisdiction. For the reasons explained below, the motion is denied.

**<u>BACKGROUND</u>**

Plaintiff Illinois Wholesale Cash Register, Inc. ("Illinois Wholesale"), an Illinois citizen, brought this action for breach of contract against defendant PCG Trading, doing business as Converge ("Converge"). Converge is a single-member limited liability company, and its member is a Delaware corporation with a principal place of business in Massachusetts. (Supplemental Decl. of Frank Cavallaro ¶¶ 3-4.)

The following facts are drawn from the complaint. Illinois Wholesale is engaged in the purchase and sale of electronic cash

register systems and components. Converge is an independent distributor of electronic components, computer products, and networking equipment. In April 2006, defendant contacted plaintiff by telephone and written solicitation to advertise approximately 605 units of a particular cash register (NCR Model 5964-7602N 15-inch color touchscreen) it was selling. "Negotiations culminated in Plaintiff issuing to Defendant a Purchase Order #20046-D, dated May 4, 2006, for 600 of [the cash registers] at approximately $225.00 each and shipping to Plaintiff in Illinois at approximately $1,500.00." (First Am. Compl. ¶ 7.) Purchase Order 20046-D is attached to the complaint as Exhibit 1. The complaint further alleges: "During negotiations, Plaintiff issued several revised Purchase Orders, including #20046-A through #20046-C, with #20046-C indicating that 604 of the [registers] were being sold. However, the final and only applicable Purchase Order in question herein is #20046-D for 600 of the [registers]." (Id. ¶ 7 n.1.)

At the time it sold the registers to plaintiff, defendant knew that plaintiff intended to resell them for a profit. Plaintiff alleges that implied in the parties' contract was defendant's representation that it possessed good and marketable title to the registers.

Before shipping the registers, defendant required that plaintiff pay $137,400, the total amount due, by wire transfer. Plaintiff transferred the payment on or about May 5, 2006.

Thereafter, on or about May 11, 2006, plaintiff received 600 registers from defendant. Because plaintiff did not receive all 604 registers that defendant initially offered, defendant gave plaintiff a credit of $675 to be applied to future purchases.

From May 2006 through November 15, 2007, plaintiff offered the registers for sale to its customers for approximately $385 each. On November 15, 2007, NCR Corporation ("NCR"), which is the manufacturer of the registers, notified plaintiff and at least one of plaintiff's customers (to which plaintiff had sold several of the registers) that several of the registers allegedly had been stolen from NCR several years prior. Plaintiff then obtained the serial numbers of the allegedly stolen registers, compared the numbers with those remaining in the inventory purchased from defendant, and determined that about 302 of the remaining registers in its possession were allegedly stolen.

Plaintiff then filed this action against defendant, claiming breach of the implied warranty of title. According to plaintiff, it has sustained damages in excess of $116,270 exclusive of interest and costs, "including, but not limited to, the cost of the goods, since NCR wants the [registers] returned, lost profits and damage to its reputation in the marketplace." (First Am. Compl. ¶ 13.)

Defendant now moves to dismiss the complaint.

## **DISCUSSION**

Federal Rule of Civil Procedure 12(b)(1) provides for
dismissal of an action for lack of subject matter jurisdiction.
When subject matter jurisdiction is not evident on the face of a
complaint, "the motion to dismiss pursuant to Rule 12(b)(1) would
be analyzed as any other motion to dismiss, by assuming for
purposes of the motion that the allegations in the complaint are
true." United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942,
946 (7th Cir. 2003). However, as here, "if the complaint is
formally sufficient but the contention is that there is *in fact* no
subject matter jurisdiction, the movant may use affidavits and
other material to support the motion." Id. We are free to weigh
the evidence to determine whether jurisdiction has been
established. See id.

Jurisdiction based on diversity exists if the amount in
controversy exceeds $75,000 and the suit is between citizens of
different states. 28 U.S.C. § 1332(a)(1). There is no dispute
that the parties are of diverse citizenship, but the amount in
controversy is at issue.

Plaintiff, as the proponent of federal jurisdiction, has the
burden of proving by a preponderance of the evidence facts that
suggest that the amount-in-controversy requirement is met. See
Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 543 (7th Cir.
2006). "Once the proponent of jurisdiction has set out the amount

in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction." <u>Brill v. Countrywide Home Loans, Inc.</u>, 427 F.3d 446, 448 (7th Cir. 2005).

The ground for defendant's motion is that the contract between the parties limits plaintiff's damages to the purchase price of the allegedly stolen registers--$67,950 (302 registers at $225 each)-- and therefore plaintiff cannot meet the $75,000 amount-in-controversy requirement for federal diversity jurisdiction. "A demand is legally impossible for jurisdictional purposes when it runs up against a . . . contractual cap on damages." <u>Johnson v. Wattenbarger</u>, 361 F.3d 991, 994 (7th Cir. 2004). We are permitted to decide at the outset of this case whether the contractual liability limitation applies to plaintiff's claims against defendant, and we may dismiss the case if the limitation applies and thus makes it impossible for the amount in controversy to exceed the jurisdictional minimum. <u>See</u> <u>Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.</u>, 60 F.3d 350, 351-53 (7th Cir. 1995). "The more distinct the damages from the merits, the more readily the district court should determine matters under Rule 12(b)(1)." <u>Id.</u> at 354. We will proceed to consider the jurisdictional question because it is completely distinct from the question of whether defendant breached the implied warranty of title.

Defendant describes the transaction as follows. In response to plaintiff's purchase orders, defendant delivered the cash

registers to plaintiff and "sent its standard invoices for" those cash registers to plaintiff. (Def.'s Mem. in Supp. of Mot. to Dismiss at 2.) The invoices upon which defendant relies, which are attached to its motion as Exhibits 1 and 2 to the Declaration of John Longo,[1] were mailed to plaintiff on May 10, 2006 and May 12, 2006, after defendant shipped the registers. (Id., Ex. A ¶ 5 & Exs. 1 & 2.) We will refer to them as the "May 10 and 12 Invoices." The invoices contain many terms and conditions, including an integration clause and the following provisions:

**9. LIMITATION OF DAMAGES:** IN NO EVENT SHALL Converge BE LIABLE FOR (I) SPECIAL, INDIRECT, CONSEQUENTIAL, OR PUNITIVE DAMAGES INCLUDING BUT NOT LIMITED TO LABOR COSTS INCURRED BY THE BUYER OR (II) ANY DAMAGES WHATSOEVER RESULTING FROM LOSS OR USE OR PROFITS ARISING OUT OF OR IN CONNECTION WITH THE PRODUCTS AND SERVICES SOLD HEREUNDER. IN NO EVENT SHALL Converge's LIABILITY EXCEED THE PURCHASE PRICE OF THE PRODUCTS OR SERVICES IN QUESTION.
. . .
**15. DISPUTES:** This agreement is deemed to be entered into in Massachusetts and to be a Massachusetts contract and shall be governed and construed in accordance with the laws of the Commonwealth of Massachusetts. . . .
. . .
**19. ACCEPTANCE:** Acceptance of Buyer's order is expressly made conditional on assent to the terms and conditions set forth herein and the attachments, if any, hereto, and they shall constitute a complete agreement between the parties. Said terms and conditions may not be varied or Buyer's order terminated in any manner, unless by a written agreement with legal consideration subsequently signed by an authorized representative of Converge. Failure to specifically dissent to these terms and conditions within a reasonable time or Buyer's

---

[1] John Longo is defendant's Director of Treasury Operations and is responsible for issuing invoices. (Def.'s Mem. in Supp.of Mot. to Dismiss, Ex. A ¶ 1.)

> acceptance of any goods covered by this acknowledgment shall constitute acceptance of said terms and conditions, and they shall be controlling in every case.

(Id., Ex. A & Exs. 1 & 2.)  Plaintiff never objected to the terms and conditions contained in the May 10 and 12 Invoices; thus, according to defendant, they became part of the contract. Defendant contends that the liability limitation is enforceable under Massachusetts law and limits plaintiff's possible recovery to the cost of goods sold, which does not meet the jurisdictional minimum.

Plaintiff responds that there are two possible views of the formation of the contract and that the terms and conditions contained in the May 10 and 12 Invoices did not become part of the contract in either instance.  Before we delve into plaintiff's argument, it is necessary to frame our discussion with the relevant principles of law.  That the parties disagree on what state's law applies (defendant relies on Massachusetts law, plaintiff on Illinois law) matters not because both states have adopted Article 2 of the Uniform Commercial Code (the "UCC"), which governs transactions involving the sale of goods.  The parties agree that the UCC governs this dispute, and they have not identified any way in which Illinois and Massachusetts have interpreted the relevant provisions differently.

Section 2-206 of the UCC, titled "Offer and Acceptance in Formation of Contract," provides that "[u]nless otherwise

unambiguously indicated by the language or circumstances . . . an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods . . . . " 810 ILCS 5/2-206(1)(b); M.G.L.A. ch. 106, § 2-206(1)(b).

Another pertinent provision of the UCC is § 2-207, titled "Additional Terms in Acceptance or Confirmation" and often referred to as the "Battle of the Forms" section, which states:

> (1)  A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>> (a) the offer expressly limits acceptance to the terms of the offer;
>> (b) they materially alter it; or
>> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3)  Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this [Act, in Illinois; chapter, in Massachusetts].

810 ILCS 5/2-207; M.G.L.A. ch. 106, § 2-207.

Plaintiff argues that under § 2-206, its purchase orders constituted offers. Attached to plaintiff's response brief is the declaration of Robert Tracy, plaintiff's Vice President of Finance, who is responsible for reviewing the terms of plaintiff's agreements with vendors and authorizing payment for transactions. Mr. Tracy states that on May 4, 2006, following a series of preliminary negotiations, plaintiff faxed defendant a purchase order, Purchase Order 20046-C, for the purchase of 604 cash registers at a price of $225 each, plus shipping charges of $1500, for a total of $137,400. (Pl.'s Mem. in Resp., Ex. 1, ¶ 3.) Purchase Order 20046-C is attached as Exhibit A to Mr. Tracy's declaration.

Mr. Tracy states that the next day, May 5, defendant sent an invoice (the "May 5 Invoice") to plaintiff for 604 cash registers. Not all of the registers are invoiced at $225 each (600 registers are $227.50 each and 4 registers are $225 each) and there is no separate shipping charge, but the invoice reflects the same total-- $137,400. (Pl.'s Mem. in Resp., Ex. 1, Ex. B.) The May 5 Invoice does not contain the limitation of liability or the other terms and conditions that are contained in the May 10 and 12 Invoices. The May 5 Invoice refers to Purchase Order 20046-B in the top corner; neither Mr. Tracy nor plaintiff's brief explains why the invoice does not refer to Purchase Order 20046-C. The May 5 Invoice also includes instructions for wiring payment to defendant. Defendant

also faxed a separate document to plaintiff that day containing more detailed wiring instructions. (Pl.'s Mem. in Resp., Ex. 1, ¶ 4.)

On May 5, Mr. Tracy authorized plaintiff's bank to wire payment to defendant's bank account. On May 10, plaintiff received the shipment of cash registers from defendant. On May 11, after it had received the cash registers, plaintiff received the May 10 Invoice (which contains the liability limitation upon which defendant relies).[2] (Pl.'s Mem. in Resp., Ex. 1, ¶¶ 5-7.)

In plaintiff's view, Purchase Order 20046-C constituted the offer, and the May 5 Invoice, which agreed in all material respects--price, quantity, and subject matter--constituted the acceptance, and thus a contract was formed. According to plaintiff, neither document contains a liability limitation, and thus the contract did not include one. Plaintiff did not learn of the terms in the May 10 Invoice until after plaintiff and defendant had fully performed their obligations to, respectively, pay for and ship the registers. Plaintiff explains its reliance in the First Amended Complaint on Purchase Order 20046-D, instead of Purchase Order 20046-C, as follows: "Converge sent 600, rather than 604, Cash Registers to Plaintiff. After the delivery of the Cash Registers, the parties agreed to modify [Purchase Order 20046-C] to

_____

[2] Mr. Tracy does not state whether plaintiff received the May 12 Invoice.

reflect [the] proper amount of units delivered." (Pl.'s Mem. in Resp. at 4.)

In reply, defendant maintains that plaintiff's allegation in the complaint that Purchase Order 20046-D was the "final and only applicable Purchase Order in question herein" is a binding judicial admission. Defendant adds that plaintiff is "hard-pressed to contend now that Purchase Order [22046-]C is the operative purchase order" and that plaintiff has made a "disingenuous" "attempt to revise the facts." (Def.'s Reply at 2.) We disagree. Plaintiff's allegation that Purchase Order 20046-D was the only applicable purchase order is an admission, but not a *binding* admission. In the words of the Seventh Circuit in <u>Help at Home, Inc. v. Medical Capital, L.L.C.</u>, 260 F.3d 748, 753 (7th Cir. 2001), the statement was part of "the preliminary best efforts of a party to provide an initial characterization of the case." At the inception of the case, plaintiff was concerned simply with alleging that the parties had entered into a contract and that defendant had breached that contract. Defendant then raised the jurisdictional issue, which entails sub-issues regarding not whether the parties had entered into a contract, but what the terms of that contract are. These are issues that were not within the purview of the complaint, and plaintiff is not precluded from arguing now that the combination of Purchase Order 20046-C and the May 5 Invoice created a contract even prior to the issuance of Purchase Order 20046-D.

Defendant addresses the substance of plaintiff's argument only briefly. It submits no additional evidence that contradicts Mr. Tracy's version of the exchange of forms. Defendant points out that the May 5 invoice refers to Purchase Order 20046-B, but fails to explain why this is material when the essential terms of Purchase Order 20046-C and the May 5 Invoice are in agreement. Defendant also contends that "the fact that the quantity and total price in the earlier Purchase Order C and [the] May 5 Invoice differ from the actual completed transaction for 600 Cash Registers demonstrate[s] that [] Purchase Order "C" and the May 5 Invoice were to be preliminary, not a final expression of the agreement," citing an inapposite opinion of a Texas state court. (Def.'s Reply at 2.)

We are unpersuaded. Defendant's argument ignores the provisions of the UCC. Under § 2-204 of the UCC, a "contract for sale of goods may be made in any manner sufficient to show agreement." 810 ILCS 5/2-204(1); M.G.L.A. ch. 106, § 2-204(1). Purchase Order 20046-C and the May 5 Invoice are in agreement on their essential terms; therefore, they established a contract. (Purchase Order 20046-D reflects that the parties thereafter modified their agreement after defendant sent 600 instead of 604 registers to plaintiff.) The May 10 Invoice upon which defendant relies was sent after the parties had already entered into a

contract and can only be viewed as a proposal to modify the terms
of the contract, to which plaintiff did not agree.

Let us assume that defendant is correct and that Purchase
Order 20046-C and the May 5 Invoice did not establish a contract.
(Now we come to plaintiff's "second version" of the events.)  There
is no evidence that any additional forms were exchanged by the
parties prior to plaintiff's payment for, and defendant's shipment
of, the cash registers.  So if the writings of the parties did not
establish a contract, as defendant contends, then the conduct of
the parties certainly did, pursuant to § 2-207(3) of the UCC:
"Conduct by both parties which recognizes the existence of a
contract is sufficient to establish a contract for sale although
the writings of the parties do not otherwise establish a contract.
In such case the terms of the particular contract consist of those
terms on which the writings of the parties agree, together with any
supplementary terms incorporated under any other provisions of this
[Act, in Illinois; chapter, in Massachusetts]."[3]  810 ILCS 5/2-
207(3); M.G.L.A. ch. 106, § 2-207(3).  Comment 7 to § 2-207 states:
"In many cases, as where goods are shipped, accepted and paid for
before any dispute arises, there is no question whether a contract
has been made."  Thus, § 2-207(3) directs us back to Purchase Order
20046-C and the May 5 Invoice for the terms on which the writings

[3] Disputed additional terms, i.e., those terms on which the writings of
the parties do not agree, cannot be brought back into a contract under the guise
of "supplementary terms."  C. Itoh & Co. (America) Inc. v. Jordan Int'l Co., 552
F.2d 1228, 1237 (7th Cir. 1977).

of the parties agree.  Even if a contract was formed by the conduct
of the parties, the May 10 Invoice still was not a part of that
contract.  Defendant submits no evidence to contradict Mr. Tracy's
statement that plaintiff received the May 10 Invoice only after it
received the goods.  The May 10 invoice constituted a proposal to
modify the terms the contract, to which plaintiff did not agree.
Defendant relies heavily on the fact that the May 10 Invoice
specified that plaintiff would accept its terms by remaining
silent, but ordinarily an offeror does not have the power to cause
silence to operate as an acceptance, see 2 Richard A. Lord,
Williston on Contracts § 6:50 (4th ed. 1991), and defendant does
not argue that any of the exceptions to this rule apply.

Defendant cites two Seventh Circuit decisions in support of
its argument that the May 10 Invoice became a part of the contract.
They are distinguishable from the instant case.  In ProCD, Inc. v.
Zeidenberg, 86 F.3d 1447, 1452 (7th Cir. 1996), the Court held that
ProCD's "shrinkwrap license," consisting of terms included inside
a box of software, was binding on a consumer who used the software
after having had the opportunity to read the terms of the license
and reject them by returning the software.  The Court reasoned that
a vendor of goods, as master of the offer, may invite acceptance by
conduct and may propose limitations on the kind of conduct that
constitutes acceptance, under § 2-204 of the UCC.  In Hill v.
Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997), the Court held

that a consumer who had ordered a computer from Gateway, a computer manufacturer that shipped computers with the same kind of accept-or-return offer that ProCD had made, was bound by an arbitration clause contained within Gateway's terms. <u>ProCD</u> and <u>Hill</u> are inapposite because, for one, the transactions involved in those cases were structured differently, with a vendor as offeror and a consumer as the offeree. Here, Illinois Wholesale placed a purchase order and was thus the master of the offer, while Converge was the offeree. Moreover, neither case involved a battle of forms; indeed, the Court in <u>ProCD</u> determined that § 2-207 of the UCC was "irrelevant" because that case had "only one form" and relied on this reasoning in <u>Hill</u>.

We conclude that a contract was formed by Purchase Order 20046-C and the May 5 Invoice that did not include the liability limitation relied upon by defendant. Even if a contract was not formed by those documents, a contract was formed by the parties' conduct, and that contract also did not include the terms contained within the May 10 Invoice from defendant. Accordingly, the limitation of liability was not an element of the parties' contract, and we cannot say that plaintiff's claim is "legally impossible" for jurisdictional purposes.

## CONCLUSION

Defendant's motion to dismiss the complaint is denied. A status hearing is set for November 19, 2008 at 11:00 a.m. to

discuss the handling of defendant's motion to stay or transfer venue, which has not been briefed.

DATE:        November 13, 2008

ENTER:       _____

John F. Grady, United States District Judge